*1026 OPINION.
Black:
Petitioner contends in the first place that the dissolution of the corporation did not constitute a liquidation of its assets, nor a taxable transaction, for the reason that the stockholders of the corporation did not acquire title to the assets. The laws of Texas provide that on the dissolution of a corporation, unless a receiver is appointed, the president and directors shall be trustees of the creditors and stockholders with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying its debts. Counsel argues from this that, because the debts had not been paid and because the president and directors of the corporation had not executed a formal conveyance or contract transferring the assets of the corporation to themselves as stockholders, title did not pass. We can not agree to this construction of the law. The Texas law referred to (Article 1388, Vernon’s Annotated Texas Statutes) was enacted for the purpose of regulating the relative rights of creditors and stockholders upon the dissolution of a corporation and a winding up of its affairs and business, where there are conflicting interests.
It is inapplicable here because the president and directors were the trustees, stockholders and transferees themselves and took charge of the assets to their individual use without any formalities. No rights of creditors intervened and, so far as the record shows, all debts of the corporation then existing have been paid. The corporate organization was merely discontinued because the stockholders regarded the rates of taxation applying to corporations as being too high and the business was continued as theretofore in partnership form, and we have held that such cases create a taxable transaction under section 201 (c) of the .Revenue Act of 1918 if any gain results therefrom.
In F. D. Keim, 4 B. T. A. 1240, a Texas case, a corporation surrendered its charter and its assets were turned over to its stockholders, who continued the business as a. partnership, and we held that this constituted a taxable transaction and that the gain should *1027 be computed by the difference between cost of stock and the net value of assets received by each stockholder.
A similar case was Aaron Pomeranz, 11 B. T. A. 507, where we said :
The petitioners insist that they did not realize profits in 1920 because they, as individuals, purchased the assets of the corporation of which they were stockholders. The only support for such a contention is the resolution set out in the findings of fact. It is clear, however, that the recitals of the resolution are at variance with the facts, and that what actually occurred was that each petitioner turned in his shares in the corporation and received a proportionate part of the net assets of the corporation. Under such circumstances the decisions of this Board in Alice M. Hastings, et al., 8 B. T. A. 670; E. C. Huffman, 1 B. T. A. 52; F. D. Keim, 4 B. T. A. 1240, and the decision of the court in Langstaff v. Lucas, 9 Fed. (2d) 291, affirmed in 13 Fed. (2d) 1022, apply and the petitioners are taxable upon gains measured by the difference between the net value of the assets received and the basis of each petitioner for the stock. The basis is not in controversy and we have left for decision only the net value of the assets received.
In order to determine whether or not there was any gain in the dissolution and distribution it is necessary to fix the net value of the assets as of May 22, 1920. In determining whether there was gain or loss, manifestly the former stockholders of the P. B. M. Company should be charged with no greater sum than the actual fair market value of the assets which they took over, less the liabilities of the corporation which they assumed. Respondent computed the net value of these assets to be the sum as set out in our findings of fact and found there was a taxable gain to the respective partners of the P. B. M. Company and that petitioner’s share of such gain was one-half of $55,037.58, amounting to $27,518.79.
This was error because the evidence shows that said assets did not have as high a market value as that given to them by the Commissioner, but had the fair market value which we have found and set out in our findings of fact. From this we hold that the profit resulting to petitioner from such transaction, and taxable under section 201 (c) of the Revenue Act of 1918, was one-half of $12,366.17, which would be $6,183.08.
Respondent contents that if, in arriving at the fair market value of the assets to determine whether there was gain or loss, the estimated closing inventory of May 22, 1920, of the corporation is decreased, the opening inventory of the partnership as of that date should be decreased in a like amount and that petitioner would be liable for her portion of the gain resulting from that inventory and the closing inventory of the partnership. In answer to this petitioner contends that the closing inventory was excessive and should be reduced, and when so reduced no gain would result.
*1028 We agree with the contention of respondent that the reduced inventory of the corporation which results from our giving effect to the fair market value of such assets at the time of the liquidation of the corporation becomes the opening inventory of the partnership. We also agree with petitioner’s contention that the closing inventory of merchandise owned by the partnership, December 31,1920, should be reduced by taking into account obsolete and unsalable merchandise then on hand and the amount of such reduction has already been stated in our findings of fact.
In arriving at our conclusion as to the net value of assets on May 22, 1920, we did not include the $197,975.73 worth of merchandise ordered but not delivered at the time of the dissolution of the corporation. So much thereof as was delivered to the partnership was absorbed in its inventory from time to time and undoubtedly is correctly reflected in the closing inventory of December 31, 1920.

Judgwsnt %oill be entered under Rule 50.